[Cite as *State v. Shepherd*, 2015-Ohio-4215.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 14CA63 |
| | : | |
| RICKY L. SHEPHERD | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the Shelby Municipal Court,
                               Case No. 13 CRB 378 A & B



JUDGMENT:                      AFFIRMED




DATE OF JUDGMENT ENTRY:        October 7, 2015




APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

GORDON M. EYSTER                       ROGER L. WEAVER
10 Mansfield Ave.                      3 South High St.
Shelby, OH 44875                       Canal Winchester, OH 43110

*Delaney, J.*

{¶1} Appellant Ricky L. Shepherd appeals from the July 7, 2014 Criminal Misdemeanor Judgment Entry of the Shelby Municipal Court. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} The following facts are adduced from testimony and exhibits introduced at appellant's jury trial.

{¶3} This case arose on October 20, 2013 around 10:54 a.m. when a 911 call was placed to the Richland County Sheriff's Office. The caller, Melissa, appellant's daughter-in-law, told dispatch she was afraid for her mother-in-law, Brenda. During the call, Melissa said appellant has a violent temper and Brenda was in danger. She said appellant had "pulled a gun" on Brenda in the past and was "crazy" and abusive. She said Brenda would not call the police herself. Melissa also said her husband, appellant's son, was on his way to the house at 41 Brenneman Street, Shiloh, and she was afraid there might be a fight because her husband would defend his mother. Melissa stated appellant has been violent toward Brenda in the past and has threatened her, but Brenda will not go to the police.

{¶4} Witness testimony developed the story of events leading to the 911 call. Appellant and Brenda had been estranged but were temporarily reunited. On October 20, appellant was angry about Brenda going to a hog roast. Two of Brenda's female relatives, Margaret Lynn King and "Rosemary," went to the house to get Brenda away from appellant because they reportedly feared for her safety. Appellant "ran off" the

relatives and Brenda remained at the house. Rosemary called Melissa's husband, appellant's son, and he went to the house, precipitating the 911 call by Melissa.

{¶5} The 911 dispatcher advised Deputy Ganzhorn, the reporting officer, of the facts stated by Melissa. Ganzhorn's understanding of the incident was a potential "domestic disturbance" in progress; he knew appellant was yelling at the caller's mother-in-law, possibly threatening her or beating her up, and allegedly had a history of threatening her with guns.

{¶6} Ganzhorn testified the Richland County Sheriff's Department has a domestic violence protocol in place for responding to calls of this nature. Domestic violence calls are treated as emergencies and if possible extra officers are dispatched; such calls are volatile and dangerous for officers and participants. One goal of a domestic violence investigation is to separate the alleged offender from the alleged victim because the victim may be intimidated and unwilling to speak to officers.

{¶7} As Ganzhorn arrived, he met appellant's son in the driveway; he asked the son whether anyone was hurt and the son said there was just a lot of yelling and screaming. Ganzhorn's purpose was to find Brenda and determine whether she or anyone else was injured. Ganzhorn entered the house and encountered Brenda. He asked whether her husband hit her or threatened her and she shook her head "no." Ganzhorn testified Brenda's head was down and her response was "not convincing." He intended to question Brenda further when appellant confronted him and refused to allow him to talk to Brenda.

{¶8} Appellant had apparently been upstairs or elsewhere in the house. When he saw Ganzhorn, he immediately told him to get out of the house. Ganzhorn still

attempted to separate appellant from Brenda to determine whether anyone was hurt or at risk. Appellant said his wife was going to a hog roast and he was not happy about it; appellant began pulling frozen meat out of a freezer and throwing it onto the floor.

{¶9} Ganzhorn said there was no reason to throw the meat and asked appellant's name and social security number. Appellant stated his name but refused to give Ganzhorn his S.S.N. Instead, appellant said he was a city councilman and would have Ganzhorn fired. Appellant repeatedly insisted that Ganzhorn leave; Ganzhorn replied he was there to complete an investigation and needed to determine what happened.

{¶10} At trial, Ganzhorn testified appellant became the focus of the investigation because he was uncooperative and interfering with his investigation into the domestic disturbance. Ganzhorn told appellant he could be arrested for obstructing official business. At this statement, appellant took several steps backward into the kitchen and Ganzhorn told him he was under arrest. Appellant continued to tell Ganzhorn to get out and was "posturing," in Ganzhorn's estimation: he was in a rigid confrontational stance which alarmed the officer. Ganzhorn pointed a taser beam at appellant's chest and told him if he didn't comply, he would be tased. Appellant continued to yell "get out" and refused to comply; Ganzhorn tased appellant once and he fell to the ground. Ganzhorn told him to stay down but appellant continued to try to get up, resulting in Ganzhorn tasing him twice more.

{¶11} By this time other officers had arrived on the scene, including Richland County Sheriff's deputies and Plymouth police officers. Appellant was handcuffed and placed in a cruiser.

{¶12} Ganzhorn spoke to Brenda and she did not offer any further information.

{¶13} Margaret Lynn King testified as a defense witness at trial. King denied knowledge of any fights that day but testified appellant was very angry and told everyone to leave the house. She saw deputies arrive as they left.

{¶14} Appellant testified on his own behalf and said he and Brenda were separated since September 2013 but he "got her to come back" briefly, which is when this incident occurred. Appellant said Brenda left when he was arrested and has never returned.

{¶15} According to appellant, that day he was upstairs when he heard Rosemary come in and tell Brenda to get her things because she was leaving with Rosemary and Margaret King. Appellant came downstairs and told the women to get out. He returned upstairs to take a shower and was coming back downstairs when he heard his son's voice. This is when he discovered the deputy sheriff in his living room. Appellant said he was "wound up" when he saw the officer and refused to give the officer his S.S.N. because there was no reason to do so.

{¶16} On cross-examination, appellant said his wife had no right to allow the deputy into the house; even though her name is also on the title, "it's not her house." His wife's relatives are not welcome inside the house because they take her to places that are "ungodly." He denied Ganzhorn attempted to question Brenda as the confrontation took place.

{¶17} Jeffrey Shepherd is appellant's son and the husband of Melissa, the 911 caller. He went to his parent's home that day because his aunt called to tell him his parents and his aunt was "scared for some reason." Jeffrey came out of the house to

retrieve his cell phone when he saw the deputy sheriff enter the house and speak with his mom. Jeffrey came back inside and saw his father arguing with the deputy; Jeffrey testified he left the house when appellant was tased the first time and he later saw appellant escorted from the house in handcuffs.

{¶18} Melissa, Brenda, and Rosemary were not witnesses at trial.

{¶19} Appellant was charged by criminal complaint with one count of obstructing official business pursuant to R.C. 2921.31(A), a misdemeanor of the second degree, and one count of resisting arrest pursuant to R.C.2921.33(A), also a misdemeanor of the second degree. Appellant entered pleas of not guilty and the case proceeded to trial by jury. Appellant did not move for judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence or at the close of all of the evidence. Appellant was found guilty as charged.

{¶20} The trial court sentenced appellant to a jail term of 90 days with 60 suspended and the remaining 30 days to be served on house arrest with work release. Appellant was also ordered to pay fines and costs and to complete an anger management evaluation and counseling.

{¶21} Appellant now appeals from the July 7, 2014 judgment entry of conviction and sentence.

{¶22} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶23} "I. THE CONVICTIONS WERE OBTAINED ON EVIDENCE THAT WAS LEGALLY INSUFFICIENT TO SUPPORT A CONVICTION FOR OBSTRUCTION OF OFFICIAL BUSINESS AND/OR RESISTING ARREST."

{¶24} "II. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL TO APPELLANT IN VIOLATION OF THE 6TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."

**ANALYSIS**

**I.**

{¶25} In his first assignment of error, appellant argues his convictions for obstruction of official business and resisting arrest are not supported by sufficient evidence. We disagree.

{¶26} We first note appellant did not make a motion for acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence or at the close of all of the evidence. However, the Ohio Supreme Court has held that a failure to timely make a Crim.R. 29(A) motion during a jury trial does not waive an argument on appeal concerning the sufficiency of the evidence. *State v. Jones,* 91 Ohio St.3d 335, 346, 2001–Ohio–57, 744 N.E.2d 1163; *State v. Carter,* 64 Ohio St.3d 218, 223, 594 N.E.2d 595 (1992). In both *Jones* and *Carter,* the Court stated that the defendant's "not guilty" plea preserves his right to object to the alleged insufficiency of the evidence. Id. We have previously recognized that a Crim. R. 29 motion is not necessary to preserve the issue of sufficiency of the evidence for appeal. *State v. Henderson*, 5th Dist. Richland No. 2013-CA-0409, 2014-Ohio-3121, ¶ 22, citing *State v. Straubhaar,* 5th Dist. Stark No. 2008 CA 00106, 2009–Ohio–4757, ¶ 40.

{¶27} Thus, we will consider appellant's argument that appellee failed to present sufficient evidence to support his convictions. The standard of review for a challenge to

the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶28} Appellant was found guilty of one count of obstructing official business pursuant to R.C. 2921.31(A), which states: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." He was also convicted of one count of resisting arrest pursuant to R.C. 2921.33(A), which states: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."

{¶29} Appellant argues he "did nothing he was not entitled to do" and therefore cannot be guilty of obstruction; further, because his arrest was illegal, he cannot be guilty of resisting arrest. His argument here, as at trial, focuses on his refusal to give Ganzhorn his S.S.N. In fact, as Ganzhorn repeatedly testified, the issue was not the S.S.N. but appellant's interference in the investigation of the domestic disturbance and Brenda's reluctance to tell him what was going on. Appellant threw meat from the freezer and refused to cooperate. Appellant himself became the focus of the

investigation when Ganzhorn told him he could be arrested for interfering and appellant moved into the kitchen, resulting in the first taser deployment.

{¶30} The "official business" of Ganzhorn was initially to determine whether Brenda was safe and whether she had been hurt.  When appellant prevented Ganzhorn from speaking with Brenda, and became recalcitrant himself, the focus shifted to appellant's actions. Appellant's behavior constituted an "act" within the meaning of the statute. His persistence in disregarding Ganzhorn's orders was sufficient evidence from which a rational trier of fact could conclude that he acted with the specific intent to prevent, obstruct, or delay Ganzhorn  in his lawful duties.  See, *State v. Friedman*, 5th Dist. Stark No. 2013CA00150, 2013-Ohio-4669, ¶ 24; *State v. Brooks*, 5th Dist. Knox No. 06CA000024, 2007-Ohio-4025, ¶ 13.

{¶31}  In *State v. Florence*, 12th Dist. Butler No. CA2013-08-148, 2014-Ohio-2337, ¶ 12, the Twelfth District Court of Appeals noted that interference with an investigation under similar circumstances rises to the level of obstructing official business:

> For the purposes of an affirmative act, we have previously found that moving away from officers, subjecting officers to verbal abuse, and physically resisting officers was sufficient to convict a defendant of obstructing official business. *State v. Merz,* 12th Dist. Butler No. CA97–05–108, 2000 WL 1051837 (July 31, 2000). Additionally, a defendant's volume and demeanor making it impossible to investigate a complaint has been found sufficient to constitute an act for an obstructing official business conviction. *City*

*of Warren v. Lucas,* 11th Dist. Trumbull No. 99–T–0019, 2000 WL 655446 (May 19, 2000).

{¶32} Upon our review of the record, including the 911 call, Ganzhorn had a reasonable basis to believe a domestic altercation was taking place. To prove the offense of resisting arrest, appellee must show that appellant knew he was under arrest before resisting. Arrest involves four elements: "(1) [a]n intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, * * * (4) which is so understood by the person arrested." *State v. Carroll,* 162 Ohio App.3d 672, 2005-Ohio-4048, ¶ 8, quoting *State v. Darrah*, 64 Ohio St.2d 22, 26, (1980) Ganzhorn told appellant he was under arrest and appellant backed up into another room; after the first taser appellant continued to attempt to get up from the floor despite officers' commands. Appellee presented sufficient evidence to support this charge. See, *State v. Deer*, 6th Dist. Lucas No. L-06-1086, 2007-Ohio-1866, ¶ 34.

{¶33} The jury could reasonably choose to believe Ganzhorn's testimony concerning appellant's conduct. Appellant himself confirmed the chaotic events at the house that day.

{¶34} Appellant's first assignment of error is overruled.

II.

{¶35} In his second assignment of error, appellant argues he received ineffective assistance of trial counsel, asserting trial counsel should have moved to suppress Ganzhorn's "testimony and statements." We disagree.

{¶36} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See,*

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶37} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶38} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶39} The failure to file a motion to suppress is not per se ineffective assistance of counsel. *State v. Madrigal,* 87 Ohio St.3d 378, 389, 2000–Ohio–448, 721 N.E.2d 52, certiorari denied, 531 U.S. 838, 121 S.Ct. 99, 148 L.Ed.2d 58, quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted. *State v. Robinson*, 108 Ohio App.3d 428, 433, 670 N.E.2d 1077 (3rd Dist.1996).

{¶40} Appellant summarily claims the motion to suppress would have been granted because "[t]he officer's failure to leave [appellant's] home was a violation of his 4th amendment rights and any statements by the officer should have been suppressed." Appellant assumes Ganzhorn entered without a warrant and thus his entrance must be supported by some exception to the warrant requirement. We first note the record is not sufficiently developed to determine whether Ganzhorn entered on his own or with Brenda's permission. If the former, appellant argues the facts here do not support an exigent-circumstances argument.

{¶41} In the instant case, we cannot speculate whether the record at a suppression hearing would support a finding of consent or of exigent circumstances, exceptions to the warrant requirement. We decline to evaluate this fact-specific issue on the trial record alone; thus is the dilemma of every appellant attempting to establish ineffective assistance for failing to file a motion to suppress. In the case of *State v. Parkinson*, Stark App. No.1995CA00208, unreported, (May 20, 1996) at 3, we observed that when counsel fails to file a motion to suppress, the record developed at trial is generally inadequate to determine the validity of the suppression motion. This reasoning is applicable to the case sub judice because based on the record, it is unclear whether a suppression motion would have been successful. *State v. Culbertson*, 5th Dist. Stark No. 2000CA00129, 2000 WL 1701230, *4 (Nov. 13, 2000) See also, *State v. Hoover*, 5th Dist. Stark No. 2001CA00138, 2001-Ohio-1964.

{¶42} We are generally reluctant to attempt to redress an appellate argument seeking to demonstrate that a motion to suppress would have been granted by the trial court, where such an argument essentially speculates as to evidence dehors the record.

*State v. Dowding*, 5th Dist. Stark No. 2014 CA 00131, 2015-Ohio-1362, ¶ 53, citing *State v. Jackson,* 5th Dist. Stark No.2005CA00198, 2006–Ohio–4453, ¶27. Furthermore, we must presume a properly licensed attorney executes his or her duties in an ethical and competent manner. See *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Under the circumstances presented, we are not inclined to overcome this presumption with the limited information in the appellate record before us.

{¶43} Appellant's second assignment of error is overruled.

## CONCLUSION

{¶44} Appellant's two assignments of error are overruled and the judgment of the Shelby Municipal Court is affirmed.

By: Delaney, J. and

Gwin, P.J.

Farmer, J., concur.