[Cite as *State v. Willey*, 2015-Ohio-4572.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2014CA00222 |
| | : | |
| BRANDI L. WILLEY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Canton Municipal Court, case no. 2014 CRB 02074

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      November 2, 2015

APPEARANCES:

For Plaintiff-Appellee:

JOSEPH MARTUCCIO
CANTON CITY LAW DIRECTOR
ANTHONY J. FLEX
218 Cleveland Ave. SW
Canton, OH 44702

For Defendant-Appellant:

GEORGE URBAN
116 Cleveland Ave. NW - Ste. 808
Canton, OH 44702

*Delaney, J.*

{¶1}   Appellant Brandi L. Willey appeals from the November 10, 2014 Judgment Entry of the Canton Municipal Court.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   This case arose on May 24, 2014, Memorial Day, shortly before 9:00 p.m.

{¶3}   Ptl. Branden Allensworth of the Louisville Police Department was on routine patrol when he noticed a woman with a baby in the neighborhood around 501 North Mill Street, Constitution Township, Louisville.  Allensworth also noticed a man standing with the woman in the road.

{¶4}   About five minutes later, a woman called 911 to report an incident at the 501 North Mill address: a woman was "choking out" a man on the front porch and the caller could see two men fighting inside the residence.  The caller was a neighbor identified as Chastity Herbert.  Herbert's residence is a few hundred feet from 501 North Mill Street, appellant's residence.  Herbert said the female assailant had a baby with her.

{¶5}   Ptl. Allensworth responded because he was already nearby.  Herbert flagged him down from her yard and identified the assailant as "Nicky."  She also provided a physical description of "Nicky."

{¶6}   Allensworth and Ptl. Mehl proceeded to the 501 North Mill address where they found two women sitting on the front porch.  One of the women was appellant Brandi L. Willey and the other woman was later identified as "Tiffany."  Allensworth thought appellant might "Nicky" because she matched the description but her companion did not.  Allensworth also initially thought he recognized appellant as the

woman he saw walking with a baby earlier. From the sidewalk, the officers asked appellant's name and she refused to tell them. The officers stated they were there to investigate a domestic situation; appellant stated they were having a party and there was no trouble. Through the glass front door, Allensworth could see and hear children inside the house upset and crying. He didn't see any males.

{¶7} Appellant continued to insist police had no reason to be there and repeatedly said she had no information about any domestic violence complaint. Eventually appellant told police her name but otherwise remained uncooperative. When Tiffany attempted to interject, appellant told her she "had it handled" and instructed her to go in the house and take care of the kids. Tiffany went inside to check on the children and when she was unable to comfort them, appellant asked whether she could go in to check on them. Officers permitted her to enter the house to check on the children then she came back out to the porch.

{¶8} Allensworth could not confirm whether a domestic violence incident occurred and whether everyone was safe. Lt. Fenstemaker, a supervisor, was called to the scene. His objective upon arrival was to speak to everyone present and figure out what happened; he knew there were young children inside the house and he wanted to make sure everyone was safe. Fenstemaker described his interaction with appellant as "difficult" and "emotionally charged" because she refused to answer his questions, interrupted him, and continually spoke over him, leading to his warning that he would soon have no choice but to place her under arrest.

{¶9} The chaos escalated when appellant's boyfriend Jerry Wright came out of the house onto the porch. Wright insisted no one had to give police any information and

was immediately belligerent with officers, who handcuffed him for safety as appellant screamed they had no right to arrest him. Fenstemaker testified that the scene "erupted" when Wright came out of the house yelling and screaming; appellant stood up and screamed as Wright was cuffed for officer safety. She and Wright yelled back and forth to each other not to tell officers anything. As Fenstemaker cuffed appellant, she yelled for "Eric" and continued yelling until she was placed in a patrol car.

{¶10} Once the scene was under control, two men came out of the house and told officers "Nicky" had been there earlier but left before police arrived, and a male fled from the back door of the residence upon the officers' arrival. One of the men, "Eric," acknowledged there had been a "domestic incident" between Nicky and a man named Dustin.

{¶11} The officers testified appellant was arrested for obstructing official business because she would not give them any information or respond to their questions; she also prevented Tiffany from speaking and hindered the investigation into the domestic violence allegations.

{¶12} The record includes a video of most of the interaction between appellant, Tiffany, Wright, and police, including the minutes leading up to her arrest. (State's Exhibit 1).

{¶13} Appellant was charged by criminal complaint with one count of obstructing official business pursuant to R.C. 2921.31(A), a misdemeanor of the second degree. Appellant entered a plea of not guilty and filed a motion to suppress challenging officers' entry onto the front porch of her residence. The trial court overruled the suppression motion by judgment entry on September 12, 2014 and the case proceeded to trial by

jury. The trial court overruled appellant's motions for a Crim.R. 29(A) judgment of acquittal. Appellant was found guilty as charged. The trial court imposed a jail term of 90 days with all 90 suspended on the conditions of appellant's good behavior for 2 years and completion of 50 hours of community service.

{¶14} Appellant not appeals from the judgment entry of her conviction and sentence, and by incorporation the judgment entry overruling her motion to suppress.

{¶15} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶16} "I. THE APPELLANT'S CONVICTION FOR ONE COUNT OF OBSTRUCTING OFFICIAL BUSINESS IN VIOLATION OF R.C. 2921.31 WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶17} "II. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS, VIOLATING HER FOURTH AND FOURTEENTH AMENDMENT RIGHTS AGAINST UNREASONABLE SEARCHES AND SEIZURES."

**ANALYSIS**

**I.**

{¶18} In her first assignment of error, appellant argues her conviction upon one count of obstructing official business is against the manifest weight and sufficiency of the evidence. We disagree.

{¶19} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*,

61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶20} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶21} Appellant was convicted upon one count of obstructing official business pursuant to R.C. 2921.31(A), which states: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Appellant argues her failure to cooperate with police cannot rise to the level of

obstructing official business.  Having reviewed the record of this case including the videotape of appellant's actions, we disagree.

{¶22} The officers'  "official business" was to investigate the allegations made by Herbert.  When appellant refused to provide information and prevented Tiffany from providing any, the focus shifted to appellant.  Her obstreperous behavior constituted an "act" within the meaning of the statute. "[Her] persistence in disregarding [the officers'] orders was sufficient evidence from which a rational trier of fact could conclude that [she] acted with the specific intent to prevent, obstruct, or delay [the officers]  in [their] lawful duties."  *State v. Shepherd*, 5th Dist. Richland No. 14CA63, 2015-Ohio-4215 at ¶ 30;  see also, *State v. Friedman*, 5th Dist. Stark No. 2013CA00150, 2013-Ohio-4669, ¶ 24; *State v. Brooks*, 5th Dist. Knox No. 06CA000024, 2007-Ohio-4025, ¶ 13.  Having listened to the audio of appellant's obnoxious responses to the officers' inquiries, it is evident she hampered and impeded the investigation.

{¶23}  In *Shepherd*, supra, we agreed with the Twelfth District Court of Appeals' rationale in *State v. Florence* finding that interference with an investigation under similar circumstances rises to the level of obstructing official business:

> "For the purposes of an affirmative act, we have previously found that moving away from officers, subjecting officers to verbal abuse, and physically resisting officers was sufficient to convict a defendant of obstructing official business. *State v. Merz,* 12th Dist. Butler No. CA97–05–108, 2000 WL 1051837 (July 31, 2000). Additionally, a defendant's volume and demeanor making it impossible to investigate a complaint has been found sufficient to

constitute an act for an obstructing official business conviction. *City of Warren v. Lucas,* 11th Dist. Trumbull No. 99–T–0019, 2000 WL 655446 (May 19, 2000)."

*State v. Shepherd*, 5th Dist. Richland No. 14CA63, 2015-Ohio-4215 at ¶ 31, citing *State v. Florence*, 12th Dist. Butler No. CA2013-08-148, 2014-Ohio-2337, ¶ 12.

{¶24} Appellant did not physically resist police in the instant case but her argumentative demeanor needlessly escalated the entire incident and entirely stalled the investigation into the original complaint.  Appellant characterizes her failure to cooperate with the officers' inquiry as an "omission" not covered by the offense of obstructing official business, but we find she acted affirmatively by making it impossible to investigate the complaint.  Appellant repeatedly talked over the officers as they attempted to confirm or negate the domestic violence allegations.  We note the video supports the officers' uncontroverted testimony about chaos ensuing as they attempted to evaluate the circumstances of the children audibly screaming in the background.  The audio also includes Wright's belligerent interaction with police and culminates in appellant screaming incoherently.

{¶25} We conclude appellant's conviction upon one count of obstructing official business is supported by sufficient evidence and is not against the manifest weight of the evidence.

{¶26} Appellant's first assignment of error is overruled.

II.

{¶27} In her second assignment of error, appellant argues the trial court should have granted her motion to suppress. We disagree.

{¶28} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶29} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the

ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶30} Here, appellant's argument is twofold: police had no basis to continue their investigatory "stop" of appellant absent a reasonable suspicion of criminal behavior, and their presence on appellant's front porch constituted an entry upon the curtilage of her property in violation of the Fourth Amendment prohibition against unreasonable search and seizure. We disagree with appellant's characterization of the facts of appellant's interaction with police.

{¶31} As we have observed, the law within the State of Ohio recognizes three types of police-citizen encounters: consensual encounters, *Terry* stops, and arrests. *State v. Stonier,* 5th Dist. Stark No. 2012 CA 00179, 2013–0hio–2188, ¶ 41, citing *State v. Taylor,* 106 Ohio App.3d 741, 747–749, 667 N.E.2d 60 (2nd Dist.1995). A consensual encounter occurs when a police officer approaches a citizen in public, engages that person in conversation, requests information, and that person is free to refuse to answer and walk away. Id. A consensual encounter does not implicate the Fourth Amendment's protection unless the police officer has in some way restrained the person's liberty by a show of authority or force such that a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. *Taylor,* supra, at 747. An officer's request to examine a person's identification or search a person's belongings does not make an encounter nonconsensual. *Florida v. Rodriguez,*

469 U.S. 1, 4–6, 105 S.Ct. 308 (1984); *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382 (1991).

{¶32} A *Terry* stop is an investigatory detention. Such a stop is valid if the officer has reasonable and articulable suspicion of criminal activity. *Taylor* at 749. For such a stop to be valid, the officer must be able to point to specific facts when coupled with reasonable inferences from those facts to reasonably warrant the intrusion. The stop "must be viewed within the totality of the circumstances" presented to the officer at the time. *State v. Freeman,* 64 Ohio St.2d 291, 414 N.E.2d 1044, (1980), paragraph one of syllabus. "An officer need not shrug his shoulders at suspected criminal activity because he lacks probable cause to arrest; rather a brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo while obtaining more information may be reasonable in light of the facts known to the officer at the time." *Freeman,* at 295–296; *citing Adams v. Williams,* 407 U.S. 143, 145–146, 92 S.Ct. 1921 (1972) (internal citations omitted).

{¶33} Appellant characterizes her entire interaction with police as a Terry stop, although we note the interaction began as a consensual encounter and became an inquiry focused upon appellant due to her refusal to answer even the most basic questions. Appellant relies upon our decision in *State v. Isles* to support her argument that the officers' investigatory "stop" of her had to cease absent reasonable suspicion of criminal behavior. 5th Dist. Stark No. 2005CA000173, 2006-Ohio-1386. The facts of *Isles* are not comparable to the facts here; appellant ignores the escalating "chaos" she initiated and contributed to. In *Isles*, we noted the facts established the defendant's benign conduct and did not support a reasonable suspicion of criminal behavior: "When

questioned by the police, appellant identified himself, albeit incorrectly, and was cooperative. * * * *. There was no action on appellant's part that could lead to reasonable suspicion of criminal behavior. Appellant's only act was to identify himself and admit [another person present at the scene] was his cousin. * * * *." *Isles*, supra, 2006-Ohio-1386 at ¶ 16, citations omitted. In the instant case, appellant's refusal to cooperate, her silencing of Tiffany, and her increasingly frenzied conduct upon Wright's involvement is not comparable to the defendant's conduct in *Isles* and instead supports the officers' reasonable suspicion of criminal behavior.

{¶34} Appellant also relies upon *Florida v. Jardines* as authority for her argument that police could not enter upon her porch; that case generally stands for the proposition that the government's use of trained police dogs to investigate the home and its immediate surroundings ("curtilage") is a "search" within the meaning of the Fourth Amendment. *Florida v. Jardines*, 133 S.Ct. 1409, 1417-18, 185 L.Ed.2d 495 (2013). The trial court found *Jardines* to be inapplicable to the instant case and we agree. The testimony at the suppression hearing established the officers spoke to appellant from their position on the sidewalk. T. 7. At trial, Fenstemaker testified it was only when Wright came out of the house yelling and screaming that the "scene erupted" and Allensworth and Mehl entered upon the porch to speak to Wright and control the scene. Appellant does not explain how *Jardines* is relevant to these facts.

{¶35} The trial court did not err n overruling appellant's motion to suppress and her second assignment of error is therefore overruled.

**CONCLUSION**

{¶36} Appellant's two assignments of error are overruled and the judgment of the Canton Municipal Court is affirmed.


By: Delaney, J. and

Wise, P.J.

Baldwin, J., concur.