[Cite as *State v. Glauser*, 2012-Ohio-3230.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                              |     |                          |
| ---------------------------- | --- | ------------------------ |
|                              | :   | JUDGES:                  |
| STATE OF OHIO                | :   | W. Scott Gwin, P.J.      |
|                              | :   | Sheila G. Farmer, J.     |
| Plaintiff-Appellant          | :   | Julie A. Edwards, J.     |
|                              | :   |                          |
| -vs-                         | :   | Case No. 2011AP100039    |
|                              | :   |                          |
|                              | :   |                          |
| WALTER T. GLAUSER            | :   | O P I N I O N            |
|                              |     |                          |
| Defendant-Appellee           |     |                          |

CHARACTER OF PROCEEDING:          Criminal Appeal from Tuscarawas
                                  County Court of Common Pleas Case
                                  No. 2011CR060164

JUDGMENT:                         Reversed and Remanded

DATE OF JUDGMENT ENTRY:           July 11, 2012

APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee

MICHAEL J. ERNEST                       MARK PERLAKY
Assistant Prosecuting Attorney          Assistant Public Defender
125 E. High Avenue                      153 N. Broadway
New Philadelphia, Ohio  44663           New Philadelphia, Ohio  44663

*Edwards, J.*

{¶1} Appellant, the State of Ohio, appeals a judgment of the Tuscarawas County Common Pleas Court granting appellee Walter Glauser's motion to suppress.

STATEMENT OF FACTS AND CASE

{¶2} On April 5, 2011, the New Philadelphia Police Department received a call from a Rite Aid drugstore that three subjects, two females and one male, came into the store and attempted to buy several boxes of Sudafed. The pharmacy became suspicious because one of the females purchased Sudafed earlier in the day from a Rite Aid in Uhrichsville. The purchases raised the suspicion of the pharmacy because there are legal limitations on how much Sudafed a person may purchase, due to its use in the manufacturing of methamphetamine. R.C. 2925.55(B) provides, "(B)(1) No individual shall knowingly purchase, receive, or otherwise acquire more than nine grams of any pseudoephedrine product within a period of thirty consecutive days, unless the pseudoephedrine product is dispensed by a pharmacist pursuant to a valid prescription issued by a licensed health professional authorized to prescribe drugs and the conduct of the pharmacist and the licensed health professional authorized to prescribe drugs is in accordance with Chapter 3719., 4715., 4723., 4729., 4731., or 4741. of the Revised Code." Pseudoephedrine is a decongestant ingredient in many over-the-counter cold medicines, including Sudafed, and is a necessary ingredient in the manufacture of methamphetamine. The caller told police that the people they were concerned about left in a white Pontiac. The caller also gave a license plate number.

{¶3} Patrolman Donald Woods received the dispatch and ran the license plate in the computer in his police cruiser. The plate belonged to Erica Chumney, who the

patrolman knew from previous dealings. While driving in the direction the vehicle was last seen, Patrolman Woods saw Erica's car in the parking lot of a Circle K convenience store. He pulled into the lot and entered the store.

{¶4} Patrolman Woods found Erica inside the store purchasing Mountain Dew. He asked her if she had been at Rite Aid and if she purchased Sudafed. She replied that she had purchased Sudafed. He asked her who was in the car with her. She replied that Amber Orr was in the backseat. The officer was familiar with Amber from past dealings. He asked Erica who the man was in the front seat. Erica replied that she didn't know his name, but he came with Amber.

{¶5} Patrolman Woods then received a report from the police department dispatcher that Rite Aid claimed a necklace was stolen from the store. He asked Erica if she or Amber came out of Rite Aid with a necklace. Erica responded that Amber came out of the store with a necklace, but she didn't know where it came from.

{¶6} Patrolman Woods exited the store. Appellee was sitting in the passenger seat with the door open. The officer asked if he had identification with him. He said no. The officer asked for his social security number. Appellee asked what was going on, and the officer replied that he'd let him know in a minute. Erica came out of the store and placed her bottles of pop on the roof of the car. While reciting his social security number, appellee glanced to his left, looked straight ahead, then jumped out of the driver's side door, knocked Erica down, and ran away.

{¶7} Patrolman Woods pursued appellee on foot. Appellee ran in a figure eight pattern around several houses, then ran back toward the parking lot of the Circle K. At that time, there was a car trying to leave the parking lot. Appellee tried to open the door

of the vehicle to get inside.  The woman driving the car locked her doors.  Appellee then ran toward the police cruiser, which Patrolman Woods had left with the ignition on but the doors locked.  Appellee ran to the driver's side door and began pulling on the handle.  After discovering the doors were locked, he ran to another vehicle which was backing out of a parking space and started pulling on the driver's side door, but the female driver had locked her doors.  Appellee then ran behind a dumpster and dove into the bushes at a house behind the store, where he was apprehended by police.

{¶8}  Appellee was taken to the police station, where he pulled a bag of methamphetamine out of his pocket.

{¶9}  Appellee was indicted by the Tuscarawas County Grand Jury with one count of possession of drugs and one count of obstructing official business.  He filed a motion to suppress arguing that the officer illegally seized his person.

{¶10}  The case proceeded to a suppression hearing in the Tuscarawas County Common Pleas Court.  Following the hearing, the court granted the motion to suppress, finding that appellee chose to terminate his dialogue in a consensual context with police, and the fact that he ran as opposed to walking, skipping, or bicycling away is not illegal.

{¶11}  The State appealed, assigning one error:

{¶12}  "THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION TO SUPPRESS AS THE POLICE HAD REASONABLE SUSPICION TO SEIZE THE APPELLEE AND THE METHAMPHETAMINE IN HIS POSSESSION."

{¶13}  The State argues that the court erred in finding that the officer did not have a reasonable suspicion of criminal activity to justify stopping appellee.

{¶14} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). "However, not every contact between a police officer and citizen implicates the Fourth Amendment. 'Only when the officer, by means of physical force or show of authority, has in some way restricted the liberty of a citizen may we conclude that a "seizure" has occurred.'" *State v. Richardson*, 5th Dist. No. 2004CA00205, 2005-Ohio-554, quoting *Terry,* supra, at 19, fn. 16.

{¶15} Ohio law recognizes three types of police-citizen encounters: consensual encounters, *Terry* stops, and arrests. *State v. Taylor*, 106 Ohio App.3d 741, 747-49, 667 N.E.2d 60 (1995).

{¶16} A consensual encounter occurs when a police officer approaches a person in a public place, engages the person in conversation, requests information, and the person is free to refuse to answer and walk away. *Id.* at 747, 667 N.E.2d 60. A consensual encounter does not implicate the Fourth Amendment's protection against unreasonable searches and seizures unless the police officer has restrained the person's liberty by a show of authority or physical force such that a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. *Id.* at 747-48, 667 N.E.2d 60.

{¶17} The second type of encounter is a *Terry* stop or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration

and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. *Id.* at 748, 667 N.E.2d 60, 106 Ohio App.3d 741, 667 N.E.2d 60. Such a stop is valid if the officer had a reasonable and articulable suspicion of criminal activity. *Id.* at 749, 667 N.E.2d 60. However, for the propriety of a brief investigatory stop pursuant to *Terry,* the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus (1980).

{¶18} In the instant case, the initial encounter between appellee and the officer was a consensual encounter. Appellee argues the encounter was not consensual because when he asked the officer what this was about, the officer told appellee he would tell appellee in a minute. Appellee argues that because the officer would not answer his question right away, he was not free to leave. We disagree. Appellee was sitting in the passenger seat of the car with the door open when the officer approached. There was no show of authority or force to indicate to appellee that he was not free to leave. The officer's choice to not answer appellee's question immediately did not convert the encounter from a consensual encounter to a *Terry* stop. The trial court correctly determined that the encounter was consensual.

{¶19} However, we disagree with the trial court's conclusion that the officer did not have a reasonable suspicion of criminal activity to justify pursuing appellee with an intent to stop him.

{¶20} In *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the suspect fled upon seeing police officers patrolling an area known for heavy narcotics trafficking.  An officer exited his patrol car and stopped the suspect.   In upholding the stop, the United States Supreme Court held that headlong flight is not necessarily indicative of wrongdoing, but it is certainly suggestive of wrongdoing:

{¶21} "Such a holding is entirely consistent with our decision in *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), where we held that when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. *Id.,* at 498, 103 S.Ct. 1319. And any "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

{¶22} "Respondent and *amici* also argue that there are innocent reasons for flight from police and that, therefore, flight is not necessarily indicative of ongoing criminal activity. This fact is undoubtedly true, but does not establish a violation of the Fourth Amendment. Even in *Terry,* the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. The officer observed two individuals pacing back and forth in front of a store, peering into the window and periodically conferring. 392 U.S., at 5–6, 88 S.Ct. 1868. All of this conduct was by itself lawful, but it also

suggested that the individuals were casing the store for a planned robbery. *Terry* recognized that the officers could detain the individuals to resolve the ambiguity. *Id.,* at 30, 88 S.Ct. 1868." *Id.* at 125.

**{¶23}** The trial court distinguished *Wardlow* on the basis that appellant was not in a high crime area and did not flee immediately upon seeing police. We find this is a distinction without a difference, as *Wardlow* stands for the proposition that headlong flight may be considered as a relevant factor in determining the propriety of a *Terry* stop. In the instant case, the police officer knew that three people, two women and a man, had been traveling in the car appellee was sitting in to two Rite Aid stores attempting to purchase Sudafed in sufficient quantities to cause the pharmacy to alert the police, and a necklace had been stolen from one of the stores. In the midst of providing his social security number to the officer, appellee didn't simply run away from police. Instead of exiting the open passenger door near the officer, he went out the driver's side of the vehicle, knocking the driver over as appellee fled. At this point, given all the facts known to the officer, he had a reasonable suspicion of criminal activity to justify stopping appellee. During the chase, this suspicion escalated as the officer observed appellee attempt to enter several moving cars, while patrons of the store were trying to exit the parking lot, and attempt to enter the driver's side of the running police cruiser.

**{¶24}** The trial court erred in granting appellee's motion to suppress. The assignment of error is sustained.

**{¶25}** The judgment of the Tuscarawas County Common Pleas Court is reversed and this case is remanded to that court for further proceedings.

By: Edwards, J.

Gwin, P.J. and

Farmer, J. concur

_____

_____

_____

JUDGES

JAE/r0508

[Cite as *State v. Glauser*, 2012-Ohio-3230.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| THE STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| WALTER T. GLAUSER | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011AP100039 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is reversed and remanded to the trial court for further proceedings.  Costs assessed to appellee.

_____

_____

_____

JUDGES