[Cite as *State v. Newsome*, 2017-Ohio-7488.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 17CA2 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| JASON M. NEWSOME, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 08/31/17** |

_____
<u>APPEARANCES:</u>

Ryan Shepler, Kernen & Shepler, LLC, Logan, Ohio, for Appellant.

Benjamin E. Fickel, Hocking County Prosecutor, Logan, Ohio, for Appellee.
_____

McFarland, J.

{¶1} Jason Newsome appeals from the trial court's judgment revoking his community control and imposing a prison term after it determined he had violated his community control by obstructing official business. On appeal, Appellant contends that 1) the State failed to prove obstructing official business or any other offense by a preponderance of the evidence; and 2) the trial court erred by admitting and relying upon hearsay in finding that he committed a probation violation. Because the State provided substantial evidence that Appellant obstructed official business, and because the Ohio Rules of Evidence regarding hearsay do not apply to

community control revocation hearings, we cannot conclude that the trial court erred or abused its discretion in revoking Appellant's community control.  Accordingly, the judgment of the trial court is affirmed.

FACTS

{¶2}  Appellant, Jason Newsome, pled guilty to one count of trafficking in heroin, a fourth degree felony, and was sentenced to community control on April 11, 2013.  A motion was filed on September 26, 2016, alleging Appellant had violated the terms of his supervision and requesting his community control be revoked, based upon the following:

"1. Condition #1:  'I will obey federal, state and local laws and ordinances, including those related to illegal drug use and registration with authorities.  I will have no contact with the victim of my current offense(s).'

To wit:  On or about 09/14/2016, in the vicinity of Hocking County, you caused or attempted to cause physical harm to Carol J. Francis.

To wit:  On or about 09/14/2016, in the vicinity of Hocking County, you purposely delayed the performance by a public office of the public officials [sic] authorized acts."

{¶3} A revocation hearing was held on November 29, 2016. At the beginning of the hearing, the State withdrew the first grounds stated in their motion, which alleged Appellant had caused or attempted to cause physical harm to Carol J. Francis. The State explained that Ms. Francis had refused to cooperate with them on the misdemeanor charges that were filed and that it did not have Ms. Francis available as a witness that day. The State went forward on their allegation that Appellant had obstructed official business and presented one witness, Deputy Dustin Wesselhoeft.

{¶4} Testimony presented by Deputy Wesselhoeft indicated that on the night in question, he was dispatched to Carol Francis' residence in response to a complaint that Appellant had assaulted her, as well as numerous calls that an intoxicated individual was knocking on doors. The deputy testified that while he was conducting his investigation at the victim's residence, he observed a car quickly pull in and then out of the victim's driveway. Because he was informed by the victim and another individual there that Appellant was in the vehicle, the deputy quickly left and initiated a traffic stop of the vehicle. However, because the deputy was informed by the vehicle occupants that Appellant had been dropped off at the victim's house, he returned to her house. Upon arriving, he was informed that Appellant had briefly entered the house and the fled to the

woods.  Deputy Wesselhoeft eventually located Appellant in the woods and he was taken into custody without further incident.

{¶5}  Defense counsel raised several objections to the deputy's testimony, arguing it constituted hearsay evidence.  The trial court, however, overruled the objections.  After hearing the evidence, the trial court revoked Appellant's community control and ordered him to serve the remainder of the original term of an eighteen-month prison sentence.  It is from this decision that Appellant now brings his timely appeals, setting forth two assignments of error for our review.

## ASSIGNMENTS OF ERROR

"I.     THE STATE FAILED TO PROVE OBSTRUCTING OFFICIAL
        BUSINESS OR ANY OTHER OFFENSE BY A
        PREPONDERANCE OF THE EVIDENCE.

II.     THE COURT ERRED BY ADMITTING AND RELYING UPON
        HEARSAY IN FINDING THAT MR. NEWSOME COMMITTED A
        PROBATION VIOLATION."

## ASSIGNMENT OF ERROR I

{¶6}  In his first assignment of error, Appellant contends the State failed to prove that he obstructed official business, or any other offense, by a preponderance of the evidence.  The State counters by arguing that Deputy Wesselhoeft's testimony established the elements of obstructing official business, and that the trial court properly concluded the State provided

substantial proof, the lesser standard for community control violations, that

Appellant committed the offense. Based upon the following we agree with

the State.

{¶7} This Court recently reflected on the proper standard of review

when reviewing decisions revoking community control in *State v. Johnson*,

4th Dist. Meigs No. 14CA10, 2015-Ohio-1373. In *Johnson*, we noted that

this Court has previously applied a two-part standard in such cases, as

follows:

> " 'Because a community control revocation hearing is not a
> criminal trial, the State does not have to establish a violation
> with proof beyond a reasonable doubt. *State v. Wolfson*,
> Lawrence App. No. 03CA25, 2004–Ohio–2750, ¶ 7, citing
> *State v. Payne*, Warren App. No. CA2001–09–081, 2002–
> Ohio–1916, in turn citing *State v. Hylton* (1991), 75 Ohio
> App.3d 778, 782, 600 N.E.2d 821. Instead, the prosecution
> must present "substantial" proof that a defendant violated the
> terms of his community control sanctions. *Wolfson*, citing
> *Hylton* at 782, 600 N.E.2d 821. Accordingly, we apply the
> "some competent, credible evidence" standard set forth in *C.E.
> Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376
> N.E.2d 578, to determine whether a court's finding that a
> defendant violated the terms of his community control sanction
> is supported by the evidence. *Wolfson* at ¶ 7, citing *State v.
> Umphries* (July 9, 1998), Pickaway App. No. 97CA45; *State v.
> Puckett* (Nov. 12, 1996), Athens App. No. 96CA1712. This
> highly deferential standard is akin to a preponderance of the
> evidence burden of proof. *Wolfson*, citing *State v. Kehoe* (May
> 18, 1994), Medina App. No. 2284–M. * * * Thus, we conclude
> the appropriate review in this matter is twofold. First, we
> review the record to determine whether there is substantial
> evidence to support the court's finding that C.M.C. violated the
> terms of probation or community control. If it does, then we

review the court's ultimate decision to revoke probation, i.e., the sanction, under the more deferential abuse of discretion standard.' " *Johnson* at ¶ 13; quoting *In the Matter of C.M.C.*, 4th Dist. Washington No. 09CA15, 2009–Ohio–4223, ¶ 17.

**{¶8}** Here, a notice of violation was filed alleging Appellant had violated the terms of his community control by obstructing official business. R.C. 2921.31 prohibits obstructing official business and provides in section (A) as follows:

> "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity."

As previously noted by this Court, "Ohio courts have interpreted this statute to criminalize only affirmative acts, not the failure to act." *State v. Certain*, 2009-Ohio-148, 905 N.E.2d 1259, ¶ 12 (4th Dist.); citing *State v. May*, 4th Dist. Highland No. 06CA10, 2007-Ohio-1428, fn. 5 ("An affirmative act is required to prove a R.C. 2921.31 obstruction of official business violation"); *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, at ¶ 10 ("A violation of this statute requires an affirmative act. A person cannot be guilty of obstructing official business by doing nothing or failing to act"); *State v. Prestel*, 2nd Dist. Montgomery No. 20822, 2005-Ohio-5236, ¶ 16 ("Ohio courts have consistently held that in order to violate the obstructing official business statute, a defendant must engage in some

affirmative or overt act or undertaking that hampers or impedes a public

official in the performance of the official's lawful duties, as opposed to

merely failing or refusing to cooperate or obey a police officer's request for

information"); *State v. Grooms*, 10th Dist. Franklin No. 03AP–1244, 2005-

Ohio-706, ¶ 18 ("R.C. 2921.31(A) requires proof of an affirmative act that

hampered or impeded performance of the lawful duties of a public official").

{¶9}  Appellant contends that the State failed to prove an affirmative

act on his part or that he acted without privilege.  Appellant also contends

the State failed to prove that law enforcement was actually hampered or

impeded.  Appellant claims that his actions of running into the woods and

hiding in the weeds when he saw law enforcement was not criminal conduct,

absent some law enforcement command to do otherwise, and that he simply

exercised his constitutional right to refrain from speaking with the deputies.

Appellant further informs this Court that he has been unable to locate a

single case where an obstructing official business conviction was upheld

where the defendant merely avoided law enforcement without disobeying a

verbal command of law enforcement.

{¶10}  In *State v. Harris*, 2015-Ohio-5378, 56 N.E.3d 286 (9th Dist.),

¶ 7, the court acknowledged that "[a]n affirmative act is required in order to

support a finding that an individual was guilty of obstructing official

business[,]" and that "the 'mere failure to obey a law enforcement officer's request may not amount to obstruction.' " (internal citations omitted). However, the court also recognized "that the 'affirmative act of running from an officer' does impede an officer's lawful duty." *Id.*; quoting *State v. Sanders*, 9th Dist. Summit No. 23504, 2007-Ohio-2898, ¶ 21. *State v. Sanders*, as well as several other cases cited by the *Harris* court, all involved scenarios where defendants either ran or retreated from law enforcement after being given an order to either, stop, come out, or put their hands up.

{**¶11**} Here, the evidence suggests Appellant ran and hid from law enforcement when he saw law enforcement, but before law enforcement spotted him. Thus, law enforcement didn't have an opportunity to order Appellant to stop. They were, nevertheless, looking for him, and the evidence suggests Appellant knew that and sought to evade them. As such, the evidence indicates Appellant was aware that police officers were attempting to detain him when he fled into the woods and hid in the weeds. The officers' "official business" was to investigate the allegations made by the various callers as well as Appellant's ex-girlfriend, Carol Francis', report that Appellant had assaulted her. Appellant had no privilege to hamper the officers in the performance of their official duties, but his actions caused

them to chase and stop a vehicle and then search woods to find him. We conclude such actions do, in fact, constitute affirmative acts.

{¶12} In *State v. LaPorte,* 4th Dist. Ross No. 14CA3450, 2015-Ohio-294, ¶19, a situation involving law enforcement responding to a residence as a result of a domestic violence report was compared to a situation where a defendant flees from a *Terry* stop. *See also State v. Willey*, 2015-Ohio-4572, 46 N.E.3d 1121 (5th Dist.) (comparing a situation involving law enforcement responding to a residence in response to a report of a "domestic incident" as a *Terry* stop.) As noted by the *Willey* court, "the law within the State of Ohio recognizes three types of police-citizen encounters: consensual encounters, *Terry* stops (brief investigatory stop or detention), and arrests." *Id.* at ¶ 31 (internal citations omitted); *see also State v. Millerton*, 2015-Ohio-34, 26 N.E.3d 317 (2nd Dist.); *State v. Glauser*, 5th Dist. Tuscarawas No. 2011AP100039, 2012-Ohio-3230; *State v. DeBrossard*, 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054. A *Terry* stop is an investigatory detention and is valid if an officer has reasonable and articulable suspicion of criminal activity. *Willey* at ¶ 32.

{¶13} As set forth above, law enforcement responded to Appellant's ex-girlfriend's house on the night in question due to several reports of an intoxicated individual knocking on doors, as well as a report that Appellant

had assaulted his ex-girlfriend.  This type of interaction can be compared to
or characterized as a *Terry* stop, or brief investigatory detention.  While
conducting their investigation at the residence, law enforcement witnessed a
vehicle pull into and then out of Francis' driveway.  Upon being informed
by the residents that Appellant was in the vehicle, law enforcement left and
gave chase to the vehicle, ultimately being informed by the occupants of the
vehicle that Appellant had been dropped off at Francis' house.  When law
enforcement returned to the residence they were then informed that
Appellant had briefly entered the house and then fled into the woods.  Law
enforcement eventually found Appellant hiding in the weeds in the woods
next to Francis' house.

{¶14}  Several courts have held that a defendant's act of fleeing from
a *Terry* stop is an affirmative act and constitutes obstructing official
business.  In *State v. Ross*, 5th Dist. Stark No. 2007-CA-00127, 2008 WL
568303, ¶ 28, the court explained that " '[h]eadlong flight-wherever it
occurs-is the consummate act of evasion: it is not necessarily indicative of
wrongdoing, but it is certainty suggestive of such.' " Quoting *Illinois v.
Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673 (2000); *see also State v.
Glauser, supra,* at ¶ 21 (unprovoked flight is simply not a mere refusal to
cooperate.)  Similarly, this Court concluded in *State v. Certain*, 180 Ohio

App.3d 457, 2009-Ohio-148, 905 N.E.2d 1259, ¶ 14, that "fleeing from police 'to hamper or impede the police from finding out [the defendant's] identity' would be a violation of R.C. 2921.31." Thus, we conclude that here, based upon the facts before us, the trial court did not err or abuse its discretion in finding that Appellant's act of fleeing from law enforcement constituted an affirmative act that hampered and impeded law enforcement's investigation on the night in question.

{¶15} We further reject Appellant's argument that he was under no obligation to make himself available to law enforcement on the night in question and that he was merely exercising his Fifth Amendment right to remain silent. In *State v. Glauser* the court reasoned as follows in determining that an officer had reasonable suspicion of criminal activity to justify pursuing the appellant with an intent to stop him:

> "In *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the suspect fled upon seeing police officers patrolling an area known for heavy narcotics trafficking. An officer exited his patrol car and stopped the suspect. In upholding the stop, the United States Supreme Court held that headlong flight is not necessarily indicative of wrongdoing, but it is certainly suggestive of wrongdoing:
> 'Such a holding is entirely consistent with our decision in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), where we held that when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. *Id.*, at 498, 103 S.Ct. 1319. And any "refusal to cooperate, without more, does not furnish the minimal level of

> objective justification needed for a detention or seizure."
> *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115
> L.Ed.2d 389 (1991). But unprovoked flight is simply not a mere
> refusal to cooperate. Flight, by its very nature, is not "going
> about one's business"; in fact, it is just the opposite. Allowing
> officers confronted with such flight to stop the fugitive and
> investigate further is quite consistent with the individual's right
> to go about his business or to stay put and remain silent in the
> face of police questioning.' " *Glauser* at ¶ 19-21.

Thus, while Appellant is correct that he had a right to remain silent in the face of questioning by law enforcement, he was without privilege to flee from them to avoid investigation.

{¶16} Additionally, with regard to any suggestion by Appellant that he could not have obstructed official business without disobeying the order of an officer, there is no such requirement contained in the elements of obstructing official business. Appellant was not charged with resisting arrest or failure to comply with the order of a police officer. Disobeying an order of a police officer is not an element the State was required to prove in order to demonstrate, by a preponderance of the evidence, that Appellant obstructed official business. Although many cases involving this offense have fact patterns that include defendants failing to obey an order and fleeing from law enforcement, we conclude a defendant can still obstruct official business without disobeying an order of law enforcement. *See State v. Puterbaugh*, 142 Ohio App.3d 185, 755 N.E.2d 359, *363 (reasoning that

there is no need to discuss falsification, as defendant was charged with obstructing official business, not falsification).  Similarly, because failing to obey an order of a police officer is not an element of obstructing official business, there is no requirement that such element be proven by the State here.

{¶17}  Finally, with respect to Appellant's assertions that the State's failure to file a formal criminal complaint charging Appellant with obstructing official business and dismissal of the assault charges involving Appellant's girlfriend in some way invalidates the State's claim that he violated his probation, we disagree.  As this Court has previously explained, "community control, probation, and parole can be revoked, even if the underlying criminal charges are dismissed, the defendant is acquitted, or the conviction is overturned, unless all factual support for the revocation is removed." *State v. Johnson, supra,* at ¶ 16; citing *Barnett v. Ohio Adult Parole Auth.*, 81 Ohio St.3d 385, 387, 692 N.E.2d 135 (1998); *State v. McCants*, 1st Dist. Hamilton No. C–120725, 2013–Ohio–2646, ¶ 9.

{¶18}  As discussed above, Appellant's interaction with law enforcement on the night in question was essentially pursuant to a *Terry-*type stop or investigatory detention.  *Terry stops* "must be viewed within the totality of the circumstances" presented to the officer at the time. *State v.*

*Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044, (1980), paragraph one of syllabus.  At the time law enforcement sought Appellant, they were investigating a report of an assault by Appellant of his ex-girlfriend.  The fact that the State did not go forward on their original claim in the notice of violation that referenced the assault because the victim would not cooperate does not diminish the fact that law enforcement was responding to a domestic report on the night in question and was operating under those facts at the time.  The dismissal of the assault complaint and failure to file a complaint charging obstructing official business in this case did not remove all factual support for the trial court's finding that he violated his community control.  Therefore, the trial court's determination that Appellant violated his community control by obstructing the official business of law enforcement officers who were responding to investigate a report of Appellant assaulting his ex-girlfriend was supported by substantial proof.

{¶19}  Thus, in light of the foregoing, we cannot conclude that the trial court erred or abused its discretion in finding the State proved, by a preponderance of the evidence, that Appellant violated the terms of his community control by obstructing official business.  Accordingly, Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**{¶20}**  In his second assignment of error, Appellant contends that the trial court erred by admitting and relying upon hearsay in finding that he committed a probation violation.  In making this argument, Appellant concedes that the Rules of Evidence do not apply at community control revocation hearings.  Nevertheless, he argues that he was prejudiced by the introduction of hearsay evidence because it was the only evidence that was presented by the State.  He contends "[t]he present case involves evidence that is *exclusively* hearsay[,]" and that his due process rights require that he be provided a right to confront and cross-examine witnesses.

**{¶21}**  This Court has previously noted, with regard to the applicability of the Rules of Evidence to community control or probation revocation hearings, that " '[p]robation-revocation hearings are not subject to the rules of evidence and thus allow for the admission of [otherwise inadmissible] evidence.' " *State v. Johnson, supra,* at ¶ 24; quoting *State v. Ohly*, 166 Ohio App.3d 808, 2006–Ohio–2353, 853 N.E.2d 675, ¶ 21 (6th Dist.); *State v. Estep*, 4th Dist. Gallia No. 03CA22, 2004–Ohio–1747, ¶ 6 ("The Rules of Evidence do not apply to community control revocation hearings"); Evid.R. 101(C)(3) ("These rules do not apply in * * * [p]roceedings granting or revoking probation [and] proceedings with respect

to community control sanctions * * * "); 1 Giannelli, Baldwin's Ohio

Practice Evidence, Section 101.11 (3d Ed.2014) ("Rule 101(C)(3) exempts

from the Rules of Evidence a number of criminal proceedings, including

those involving sentencing, probation, and community control sanctions");

*State v. Talty*, 103 Ohio St.3d 177, 2004–Ohio–4888, 814 N.E.2d 1201, ¶ 16

(recognizing "no meaningful distinction between community control and

probation").  "The rationale for this exception is that a trial court should be

able to consider any reliable and relevant evidence indicating whether the

probationer has violated the terms of probation, since a probation or

community control revocation hearing is an informal proceeding, not a

criminal trial." *State v. Gullet*, 5th Dist. Muskingum No. CT2006–0010,

2006–Ohio–6564, ¶ 27; citing *Columbus v. Bickel*, 77 Ohio App.3d 26, 36,

601 N.E.2d 61 (10th Dist.1991).  Thus, we reject any argument by Appellant

that the trial court's reliance on hearsay evidence, in general, constituted

error.

{¶22} With respect to Appellant's argument that the evidence

presented by the State was exclusively hearsay and that the trial court's

reliance upon it, without more, deprived him of his due process rights and

constituted reversible error, Appellant is correct that " '[t]he introduction of

hearsay evidence into a probation-revocation hearing is reversible error

when that evidence is the only evidence presented and is crucial to a determination of a probation violation.' " *Johnson* at ¶ 25; quoting *State v. Ohly* at ¶ 21; *see also State v. McCants*, 1st Dist. Hamilton No. C-120725, 2013-Ohio-2646, ¶ 14 ("Although the rules of evidence are inapplicable to revocation hearings, the admission of hearsay may implicate the defendant's right to confront and cross-examine witnesses.").

{¶23} Here, however, the trial court did not rely exclusively on hearsay evidence. Hearsay is an out-of-court statement offered in court as evidence to prove the truth of the matter asserted. Evid.R. 801(C). This Court has consistently held that " ' "[i]t is well settled that statements offered by police to explain their conduct while investigating a crime are not hearsay because they are not offered for their truth, but rather, are offered as an explanation of the process of investigation." ' " *State v. Trainer*, 4th Dist. Pickaway No. 14CA21, 2015-Ohio-2548, ¶ 12; quoting *State v. Gerald*, 4th Dist. Scioto No. 12CA3519, 2014–Ohio–3629, ¶ 70; quoting *State v. Spires*, 4th Dist. Gallia No. 10CA10, 2011–Ohio–3661, ¶ 13; quoting *State v. Warren*, 8th Dist. Cuyahoga No. 83823, 2004–Ohio–5599, ¶ 46; citing *State v. Price*, 80 Ohio App.3d 108, 110, 608 N.E.2d 1088 (1992); *State v. Braxton*, 102 Ohio App.3d 28, 49, 656 N.E.2d 970 (1995); *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (1987).

{¶24} The testimony to which Appellant objected during the hearing involved statements made by Deputy Dustin Wesselhoeft regarding the steps he took in attempting to locate Appellant as he was conducting his investigation on the night in question. He first testified to a report he personally received from dispatch. He next testified to the information provided to him by the victim regarding the identity and location of Appellant as he was conducting his investigation. He next testified to personally seeing a vehicle pull into the driveway and then leave, as well as the information provided to him indicating Appellant was in the vehicle, which led him to follow and then stop that vehicle. He then testified regarding information provided by the driver of the vehicle he stopped, that indicated Appellant had been dropped off at the victim's residence, which led him to return to the residence to continue his investigation. He then testified to information provided again by the victim and another person in the victim's house indicating Appellant had fled into the woods. He finally testified to personally locating Appellant, who was hiding in the weeds in the woods near the house.

{¶25} While some of the information contained in Appellant's testimony was provided to Appellant by individuals that did not testify at trial, some of the testimony was based upon the deputy's eyewitness account

of what happened that night.  Other statements encompassed within the deputy's testimony that explained the course of the investigation and how Appellant was eventually located were not hearsay, as they served as an explanation of the process of the investigation.  In fact, when Appellant's counsel repeatedly objected to the testimony during the hearing, the objections were overruled based upon the trial court's stated reasoning that "[n]ormally this sort of thing is not offered for the truth, but just simply to explain the officer's subsequent actions so -- * * * All right.  So we'll overrule that at that [sic] this point."  Thus, the trial court properly overruled Appellant's objections on the correct basis.  Based upon the foregoing, we find no merit to the arguments raised in Appellant's second assignment of error and it is, therefore, overruled.

{¶26}  Having found that the State provided substantial proof that Appellant obstructed official business, we cannot conclude that the trial court erred or abused its discretion in revoking Appellant's probation.  Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, J.: Concurs in Judgment and Opinion as to Assignment of Error II; Concurs in Judgment Only as to Assignment of Error I.
Harsha, J.: Concurs in Judgment Only.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL:** **Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**