[Cite as *State v. McCoy*, 2020-Ohio-3088.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 19CA4 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| MARK A. MCCOY | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Timothy P. Gleeson, Gleeson Law Office, Logan, Ohio, for Appellant.

Jason D. Holdren, Gallia County Prosecuting Attorney, Jeremy J. Fisher, Assistant Prosecuting Attorney, Gallipolis, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Mark A. McCoy appeals the judgment entry of the Gallia County Common Pleas Court, entered April 16, 2019. Upon entering a guilty plea, McCoy was convicted of one count of endangering children. On appeal, McCoy argues the trial court erred by failing to freely and liberally grant his pre-sentence request to withdraw his guilty plea. Upon review, we find no merit to McCoy's argument. Accordingly, we overrule the sole assignment of error and affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} On January 30, 2019, Mark A. McCoy, ("Appellant"), was indicted on two counts of endangering children.  The alleged victim was his two-year-old grandson ("B.T."), and the date of the alleged incident was December 24, 2018.  Specifically, Appellant was charged with Count 1, endangering children, in violation of R.C. 2919.22(B)(1), a felony of the second degree; and Count 2, endangering children, in violation of R.C. 2919.22(A), a felony of the third degree.

{¶3} Appellant pled not guilty at arraignment.  The trial court appointed counsel and established bail at $1,000,000.00 (one million dollars), with 10% posting allowed.  Appellant remained in jail in lieu of posting bail.

{¶4} The parties exchanged discovery, the trial court conducted pretrial status conferences, and trial was scheduled for March 6, 2019.  On the morning of trial, defense counsel filed a motion in limine.  The motion requested the trial court rule that ten brief audio recordings made by Appellant's girlfriend Kelly Bainter, which consisted of Appellant yelling at his grandson, be found inadmissible for purposes of trial.

{¶5} Prior to seating the jury, the trial court, attorneys, and Appellant listened to the recordings.  On Recording #5, the male speaker is heard cursing and a child is whimpering in the background.  The speaker repeatedly curses and berates the child, at one point yelling, "Mother fucker...I will goddamn snap your goddamn little neck."  The court made a partial ruling on the motion in limine, ruling that Recording #5 would be admissible.  The trial court reserved ruling on the remaining recordings until witness testimony on the issue could be presented.  The necessary witness, Kelly Bainter, was not present at court so the trial court proceeded with jury selection and seated a jury.

{¶6} After a lunch break, the trial court allowed Appellant to present evidence on the motion in limine outside the presence of the jury.  Appellant testified that his relationship with Kelly Bainter was "pretty rocky" at the time of the incident.  Regarding the verbal statements on the recordings, Appellant testified:  "No, not everything was addressed towards the child, no."  However, on cross-examination, Appellant testified:  "I don't know if that's actually me or not."  The trial court recessed without making a further ruling on the motion.  After the recess, the parties reported that they had reached a plea agreement.

{¶7} Pursuant to the agreement, Appellant would plead guilty to the first count of endangering children, the second-degree felony. In consideration of the plea, the State would refrain from making a specific sentencing recommendation to the trial court. The State also agreed to dismiss the second count.

{¶8} The matter was scheduled for sentencing on March 13, 2019.[1] At the beginning of the sentencing hearing, defense counsel requested a continuance to investigate a claim that the recordings of Appellant allegedly verbally and physically abusing his grandson were fabricated. The trial court granted this request. Appellant posted bail and was released from jail. As a condition of release, Appellant was ordered to have no contact with B.T., J.T. (B.T.'s mother), and Kelly Bainter. Sentencing was rescheduled for March 28, 2019.

{¶9} On March 22, 2019, a warrant was issued for Appellant's arrest after he allegedly violated a condition of his bond. Appellant had been found hiding in a box spring inside a mattress in a residence where Kelly Bainter was also present. On March 27, 2019, Appellant filed a motion to withdraw his plea and a motion for mistrial.

---

[1] The transcript of the sentencing hearing is dated February 13, 2019, but the record reflects a March 7, 2019 "Journal Entry-Plea with Presentence Investigation Ordered," which sets the sentencing date for March 13, 2019.

{¶10} On March 28, 2019, the trial conducted a hearing on Appellant's motion to withdraw his plea. The trial court concluded that no reasonable or legitimate basis existed to grant Appellant's request. On April 12, 2019, the trial court filed a judgment entry denying the motion. On April 16, 2019, the trial court conducted the sentencing hearing and imposed a maximum prison sentence of a stated term of eight years.

{¶11} This timely appeal followed. Where pertinent, additional facts are set forth below.

## ASSIGNMENT OF ERROR

"I.  THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DECLINING TO FREELY AND LIBERALLY GRANT MCCOY'S PETITION TO WITHDRAW HIS GUILTY PLEA."

## A. STANDARD OF REVIEW

{¶12} Crim.R. 32.1 states:  "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." *See State v. Burke,* 4th Dist. Lawrence Nos. 19CA1 and 19CA2, 2019-Ohio-4744, at ¶ 12.  "[A] presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Hoke,* 4th Dist. Lawrence No. 10CA32, 2011-Ohio-1221, ¶ 12 (internal quotations omitted), quoting *State*

*v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, at ¶ 57, quoting *State v. Xie,* 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). However, a defendant "does not have an absolute right to withdraw a guilty plea prior to sentencing." *Xie* at paragraph one of the syllabus; *see also State v. Spivey,* 81 Ohio St.3d 405, 415, 161, 1998-Ohio-437, 692 N.E.2d 151. "The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court" and will not be reversed absent an abuse of that discretion. *Xie* at paragraph two of the syllabus. *See also State v. Brown,* 4th Dist. Ross No. 16CA3544, 2017-Ohio-2647, ¶ 11. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Furthermore, "[w]hen applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1,* 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).

{¶13} When determining whether a trial court abused its discretion by denying a presentence motion to withdraw a plea, we consider the following factors: " ' " '(1) whether the accused was represented by highly competent counsel; (2) whether the accused was given a full Crim.R.

11 hearing before entering the plea; (3) whether a full hearing was held on the withdrawal motion; and (4) whether the trial court gave full and fair consideration to the motion.' " ' " *Burke, supra*, at ¶ 13, quoting *Hoke* at ¶ 13, quoting *State v. Campbell,* 4th Dist. Athens No. 08CA31, 2009-Ohio-4992, at ¶ 7, quoting *State v. McNeil,* 146 Ohio App.3d 173, 176, 765 N.E.2d 884 (1st Dist.2001); *see also State v. Gibbs,* 4th Dist. Ross Nos. 10CA3137 and 10CA3138, 2010-Ohio-2246, at ¶ 9. Other considerations include: " '(1) whether the motion was made within a reasonable time; (2) whether the motion set out specific reasons for the withdrawal; (3) whether the accused understood the nature of the charges and the possible penalties; and (4) whether the accused was perhaps not guilty or had a complete defense to the charges.' " *Campbell at* ¶ 7, quoting *McNeil*, 146 Ohio App.3d at 176. A change of heart or mistaken belief about the plea is not a reasonable basis requiring a trial court to permit the defendant to withdraw the plea. *Campbell* at ¶ 7; citing *State v. Lambros,* 44 Ohio App.3d 102, 103, 541 N.E.2d 632 (8th Dist. 1988).

## LEGAL ANALYSIS

{¶14} In this case, Appellant concedes that the trial court recognized the correct framework for analysis of his motion to withdraw his guilty plea. However, Appellant asserts the trial court's findings are not

supported by the record.  Appellant asserts that (1) the trial court assigned

much weight to the plea settlement terms in considering whether Appellant

was represented by highly competent counsel; (2) the trial court made

findings upon facts not properly before the court or in the record at the time

of the hearing on his motion to withdraw his plea by relying upon the pre-

sentence investigation report (PSI), which was not offered into evidence; (3)

that he is innocent and did not abuse his grandson; and (4) that he entered a

plea based on his emotional state after hearing "doctored" recordings.

Appellant argues that he did not recall yelling at his grandson as was

indicated in the recordings and only after learning that the recordings were

"doctored" did he seek to withdraw his plea.

{¶15} Appellant concludes that due process requires that he be

allowed the opportunity to fully develop and present his defense.  The issue

of the authenticity of the recordings can be determined by forensic analysis.

Appellant requests this court reverse his conviction and find that the trial

court should have allowed him to withdraw his guilty plea.  We first observe

the record indicates the trial court delayed sentencing for two weeks at

Appellant's request in order to give him time to investigate the authenticity

of the recordings.

{¶16} In the trial court's judgment entry denying the motion to withdraw guilty plea, the trial court discussed the relevant factors and made the following findings:

1)  Highly competent counsel represented Appellant.

2) The trial court afforded Appellant a full Criminal Rule 11 hearing before entering his plea by engaging in discussion with Appellant and covering all necessary subjects set forth in the rule.

3) The trial court held a full hearing on Appellant's motion wherein Appellant presented evidence.

4) The trial court gave full and fair consideration to Appellant's motion by considering the evidence and the law as applied to the evidence and detailed its reasoning in the court's ruling.

5) Appellant did not file his motion within a reasonable time.

6) Appellant gave three reasons for requesting withdrawal of his plea.

7) Appellant understood the charges against him, the nature of the charges, the possible penalties and consequences of his plea.

8) The trial court discussed whether Appellant was "perhaps not guilty or had a complete defense to the charges."

9) The State would suffer prejudice.

{¶17} Our review of the entire record reflects that the trial court's findings are supported. The record indicates that Appellant's trial counsel held 20-plus years of legal experience, had been a public defender, and had tried felony and murder cases. While Appellant belittles the plea agreement in that the lesser felony was dismissed, his counsel achieved substantial success in that his client also received the State's promise to remain silent as to any sentencing recommendation. This benefit alone is substantial.

{¶18} Highly important is the fact that the record demonstrates that Appellant received a full Criminal Rule 11 hearing before entering his plea. The record demonstrates Appellant was 45 years old and a high school graduate with two years of vocational training. He testified he could read and write English, had various certificates of training, and had worked as a union painter and for the Shelly Company.

{¶19} The trial court engaged in a detailed colloquy with Appellant. Appellant testified that although he was on prescription medication for a chemical imbalance, he was "of sound mind," and his medications did not interfere with his ability to understand the proceedings. Appellant also testified that he did not have any mental illness or condition that would interfere with his understanding. Trial counsel further assured the court that

Appellant appeared to be competent and not impaired by his medications. The trial court specifically found that Appellant was "alert and responsive, * * * providing detailed information."

{¶20} The trial court also inquired as to whether Appellant understood the nature of the charges and whether he had been threatened, forced or coerced into entering his plea. Appellant replied "Yes ma'am" to his understanding the allegations and "No ma'am" as to whether he had been forced or coerced to plead guilty. Trial counsel acknowledged that he had discussed the elements of the charged offenses, talked extensively about defenses available to Appellant, and advised him of his state and federal constitutional rights. Appellant verified that his counsel had engaged in these discussions and also expressed satisfaction with his counsel's representation. Appellant acknowledged his counsel had explained the plea agreement and they had read through it together.

{¶21} The trial court iterated that Appellant would be making a complete admission to the allegations if he entered a plea and Appellant acknowledged his understanding. He also expressed understanding that he was waving his right to have further action on his motion in limine. The trial court also explained the maximum penalties.

{¶22} The trial court also went over Appellant's federal constitutional rights and explained that by entering a plea, Appellant was specifically waiving them. The trial court specifically asked Appellant, "Have you had enough time to think about this decision?" and, "Are you certain this is what you want to do?" Appellant replied affirmatively to both questions.

{¶23} The State of Ohio recited the facts as follows:

Um, going on to the date of December 23, 2018 continuing into the 24th, * * * in Gallia County at Mr. McCoy's home, his residence there uh, he did have a live-in girlfriend I believe. * * * Uh, [B.C.], his two-year-old grandson um, had been in his custody and care and responsible for him about December 18th until that uh, 24th when [B.C.] had been taken to the hospital. Mr. McCoy also acknowledged at one of the motion hearings as well as uh, through the jail calls various other things, that he had taken some drugs uh, going into the evening, early hours of the morning or sometime prior to that but it had affected him and he, I think he even acknowledged he'd gotten some bad stuff, * * * whether it was Flakka or bath salts. * * * [W]asn't in his right mind. Um, obviously under Ohio and its been explained voluntary intoxication is not a defense to things. Um,

this isn't an intentional act or purposeful act uh, it's a reckless standard in this charge. Um, there's audio clips uh, circumstantial that go and show the verbal abuse that uh, even out of character as Mr. McCoy had put it. Um, I don't think there's any dispute that he recognizes that's his voice in, on there and you can hear [B.T.] in the background uh, pertaining to the events that happened throughout the night there. Dr. Huber, who was present today out in the hall who was ready to give her expert opinion um, that ultimately the extensive workup where [B.T.] had been taken to Holzer Hospital, sent to Children's Hospital due to the nature of the injuries uh, the excessive bruising and swelling uh, in the genital area specifically. * * * He was hospitalized several days uh, elevated liver enzymes, extensive bruising as mentioned. There was a trauma team that was assigned and she is a specialized pediatrician. And then at the conclusion, conclusion of that her expert opinion was that it was non-accidental trauma.

{¶24} At this point, the trial court asked Appellant if he concurred in the statement of the facts presented by the State and he first stated "We agreed upon it," then "Oh, yeah." At that point the trial court inquired

whether everything Appellant had said was of his own freewill and he replied, "Yes ma'am." Thereafter, he entered a plea of guilty. The trial court also went over the waiver in writing with Appellant, who affirmed the authenticity of his signature and the date. He also affirmed that he understood everything in the document and that he had signed it voluntarily.

{¶25} The transcript further reflects the trial court also went over the guilty plea form with Appellant paragraph by paragraph. He again acknowledged his ability to understand and testified again, "And I've of sound mind, body and soul [sic.]" At the conclusion of the colloquy, the trial court accepted the waiver and guilty plea forms and made a finding on the record that they were executed "knowingly, voluntarily, and intelligently." She further found that Appellant understood the nature of the charge, the effects of the guilty plea, the possible penalties, and was afforded all rights pursuant to Criminal Rule 11.

{¶26} Our review of the record demonstrates that every other additional finding the trial court made in denying Appellant's motion to withdraw his plea is supported by the record and we decline to reiterate them. The trial court held a full hearing on Appellant's motion to withdraw his plea; the trial court's ruling was detailed and indicated she gave full and fair consideration to the motion; the motion was not filed at a reasonable time—Appellant filed

the motion on the morning of sentencing and only after he had violated a condition of bond and after a jury had been seated and dismissed. In addition, the trial court considered Appellant's reasons and whether or not he was "perhaps not guilty or had a complete defense to the charges."

{¶27} Next, we will review Appellant's reasons for filing to withdraw his plea:

(1) The trial court assigned much weight to the plea agreement in finding Appellant was represented by highly competent counsel;

(2) The trial court made findings of facts not properly before the court by relying, as referenced in the court's entry denying the motion to withdraw, upon the PSI;

(3) Appellant's innocence; and,

(4) Appellant entered the plea based upon his emotional state after hearing "doctored" recordings.

{¶28} First, we find no merit to his assertion that his counsel was not highly competent. We have discussed that sufficiently in Paragraph 17 above.

{¶29} Second, Appellant argues that the trial court made findings upon facts not properly before the court or in the record at the time of the

hearing on his motion to withdraw. This is based on the court's references to the PSI in the entry denying the motion to withdraw. The trial court referenced the PSI in finding that Appellant had highly competent counsel. The trial court referenced the PSI again when it discussed whether Appellant was not guilty or had a complete defense. Upon review, we are not convinced the trial court abused its discretion by referencing the PSI report or by relying upon it.

{¶30} The record reflects at the close of the motion to withdraw hearing, which was held on Appellant's second sentencing date, the trial court stated she wished to give full and fair consideration to the arguments made and rescheduled the sentencing and her decision on the motion for two weeks later. The trial court apparently had the PSI ready at hand. And, given that the trial court did not rule on the motion to withdraw from the bench, Appellant's counsel did not have opportunity to object to the PSI information being considered with regard to the motion to withdraw Appellant's plea.

{¶31} However, even if Appellant had interposed an objection, the trial court likely would have overruled it. It is well-settled that the Rules of Evidence do not apply at miscellaneous criminal proceedings. *See* Evid. R. 101(C)(3). *State v. Strong*, 4th Dist. Ross No. 18CA3663, 2019-Ohio-2888,

at ¶ 31, (Rules of Evidence do not apply to suppression hearings); *State v. Newsome,* 4th Dist. Hocking No. 17CA2, 2017-Ohio-7488, at ¶ 21, (Rules of Evidence do not apply to community control revocation hearings); *State v. Blanton,* 4th Dist. Adams No. 16CA1031, 2018-Ohio-1275, at ¶ 92; (Sexual predator determination hearing is similar to sentencing or probation hearings where it is well-settled that the Rules of Evidence do not apply); *State v. Patton*, 4th Dist. Highland No. 18CA9, 2019-Ohio-2769 at ¶ 25 (Court is not restricted by the Rules of Evidence when determining the amount of a restitution order.)

{¶32} The trial court referenced the PSI when considering whether Appellant was represented by highly competent counsel. We have discussed above at Paragraphs 16-26 that the trial court's findings are supported by the record. And, the trial court referenced the PSI when discussing whether Appellant was not guilty or had a complete defense to the charges. As will be discussed below, evidence of Appellant's guilt or defenses interposed was brought to the trial court's attention during the hearings on Appellant's motion in limine and motion to withdraw his plea. Therefore, we find no merit to Appellant's assertion that the trial court abused its discretion and based its findings on evidence not properly before the court.

{¶33} Third, we are skeptical of Appellant's claim of innocence. Appellant was afforded a full Criminal Rule 11 hearing. As set forth above in Paragraph 24, Appellant agreed to the statement of facts set forth by the State and acknowledged his guilt. Later, the transcript of the motion to withdraw hearing indicates the State of Ohio called Detective Justin Rice, a 13-year veteran of the Gallipolis Police Department. Detective Rice testified that he had monitored the jail records and phone call records of Appellant throughout the pendency of the case. On the date Appellant entered his plea, after returning to the jail, Appellant spoke to a person named Jean. Detective Rice testified:

> He told Jean that he had uh, entered a guilty plea and that he
> had uh, done wrong. He was cussing and yelling at little man
> and uh, he shouldn't have been doing that.

{¶34} On redirect examination, Detective Rice testified he had heard hundreds of phone calls of Mr. McCoy through the jail system and the voice on the recording sounded the same as the jail calls. He further testified that during one of the phone calls after the guilty plea, Appellant expressed that he was "hoping for probation or community control."

{¶35} Furthermore, Appellant has changed his story several times at the preliminary hearing. Appellant first testified his grandson's injuries

came from two 50-60 pound dogs who knocked the child down some steps and caused him to hit concrete. He next testified he was working in his garage and the child was sitting nearby. Appellant was about to drop a ratchet so he "slung it" and it ended up hitting the child across the leg, on the groin area, and "knocked [B.T.] on his rear end." Finally, Appellant vaguely alluded to letting the child go with someone named Zach Taylor for an hour or so. And, no evidence presented at the preliminary hearing indicated that Appellant did anything to help the child once he "noticed" injuries derived from these other alleged incidents of injury.

{¶36} Additionally, Appellant is no stranger to the criminal justice system. The transcript reveals Appellant alluded to "verbal" domestics when questioned at his preliminary hearing about his prior record. Verbal abuse was the precursor to B.T.'s injuries, as admitted by Appellant when he testified at the motion in limine hearing, "No, not everything was addressed toward the child, no." For all the above reasons, Appellant's credibility is lacking, and his innocence is not debatable given he entered a valid plea.

{¶37} Fourth, we find no merit to Appellant's argument about his emotional state upon hearing the recordings or the claim that the evidence was fabricated. Appellant testified at the motion to withdraw hearing that he became emotionally distraught at the motion in limine hearing when he

heard the recordings. However, that was not the first time he heard the recordings. The recordings were played at his preliminary hearing in the Gallipolis Municipal Court. The preliminary hearing is where Appellant testified that "not everything on the recordings" was addressed to the child. Furthermore, as set forth fully above, the transcript of Appellant's full Criminal Rule 11 hearing demonstrates his clear state of mind when he entered his plea.

{¶38} As to Appellant's claim regarding the authenticity of the recordings, Appellant testified at the motion to withdraw hearing that he learned the recordings were "doctored" from a friend, Sam Maggard. Jerry Powers, who dated Appellant's daughter, also had information. Appellant testified the voice on the recording sounded like him, but he was not sure it was him because he and his father's voice sound very similar.

{¶39} However, when cross-examined, Appellant admitted that Sam Maggard and Jerry Powers are not experts in computer science and that he is not even sure if Sam Maggard was present on the date of the incident. Similarly, Appellant admitted he's only seen his father twice in the last few years and to his knowledge, his father was not nearby on the date of the incident. Again, this testimony occurred after the trial court had already given Appellant a two-week delay in sentencing to investigate the issue and

he failed to produce Sam Maggard, Jerry Powers, or any other witness or other evidence at the motion to withdraw hearing.

{¶40} At the motion to withdraw hearing, Detective Rice also testified he is a certified Cellebrite operator and physical analyst.[2] He testified he had worked numerous cases involving cell phone extractions. He testified that to his knowledge it is not possible to manipulate someone's voice on a recording or change words in a recording. Detective Rice specifically testified that the recordings at issue in this case came into his possession at approximately 11:00 a.m. on Christmas Eve, immediately after all the bruising and injuries to B.T. had been discovered. In his opinion, none of the recordings appeared to have been fabricated.

{¶41} We find Appellant's arguments to be self-serving and his reasons for filing a motion to withdraw his plea not plausible. We construe his true reason as a "change of heart," possibly occurring after he was released from jail for a time prior to sentencing, or when he realized the trial court's sentence was not going to be probation or community control as requested. Based upon the foregoing, we find the trial court did not abuse its discretion in denying Appellant's motion to withdraw his guilty plea. As

---

[2] According to Cellebritelearningcenter.com, Cellebrite is a world leader in digital forensics and students attending certification courses receive instruction from expert instructors who have worked criminal and civil cases. Accessed November 21, 2019.

such, the assignment of error is hereby overruled.  The judgment of the trial

court is affirmed.

**JUDGMENT AFFIRMED.**

**<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J. concur in Judgment and Opinion.

For the Court,

_____

Jason P. Smith

Presiding Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**